THE PEOPLE OF THE STATE OF .NEW YORK ex rel. CAYUGA POWER CORPORATION, Relator, *v.* PUBLIC SERVICE COMMISSION, SECOND DISTRICT, OF THE STATE OF NEW YORK, Respondent.

Third Department, November 18, 1918.

Corporations — authority of corporation authorized to generate and distribute electricity, to alter its certificate under section 18 of Stock Corporation Law so as to conduct a lighting business.

A corporation formed for the purpose of generating and distributing electricity upon or through private property for railroad or street railroad purposes, or for its own use, or for the use of its tenants, may, under section 18 of the Stock Corporation Law, alter its certificate by incorporating therein a statement of the general purpose for which a company could be incorporated for general lighting purposes, and hence it is error for the Public Service Commission to hold that said corporation was not legally incorporated to carry on a lighting business and to refuse to consider its application to exercise its franchise upon the merits.

The new powers which may be conferred upon a corporation by altering its certificate under section 18 of the Stock Corporation Law are not confined to those permitted to a corporation organized under the same law as the original corporation, but include those which may be exercised by any corporation organized under any general law, indicating clearly that the law under which the corporation was formed is immaterial. The · test is that the corporation sought to be formed under the original and amended certificate shall be limited to the powers which might be included in a certificate of incorporation under any law, and that the business shall be of the same general character.

WOODWARD and COCHRANE, JJ., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 7th day of November, 1917, directed to the Public Service Commission, Second District, of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in denying the application of relator for permission to exercise its franchise as a lighting corporation in certain towns, upon the ground that the company is not legally incorporated to carry on that business, and also all its proceedings had in making an order denying the application of the company for permission *nunc pro tunc* to issue a mortgage and dispose of its bonds and capital stock, which denial was upon the same ground.

The corporation as formed May 4, 1915, had for its purpose the generation and distribution of electricity upon or through private property for railroad or street railroad purposes, or for its own use, or for the use of its tenants. December 12, 1916, pursuant to section 18 of the Stock Corporation Law, it altered its certificate by incorporating into it a statement of the general purposes for which a company could be incorporated for general lighting purposes.

*E. H. Bostwick,* for the relator.

*Ledyard P. Hale,* for the respondent.

JOHN M. KELLOGG, P. J.:

I think it is unnecessary to determine whether, as matter of law, the original certificate created a business or a transportation corporation. Apparently the company originally only intended to generate and distribute electricity upon or through private property, for railroad or street railroad purposes, or for its use, or for the use of its tenants, as stated in the articles of incorporation, and if that was the intention it was proper and necessary to so state the facts. No sinister motive is to be attributed to the company because it stated its real purposes which deprived the Public Service Commission of supervision over it. No advantage could come to the company from misstating its purpose, or for incorporating for one purpose and subsequently altering its certificate so

as to include another purpose, for it is evident that the corporation as changed must conform to the laws relating to corporations formed for the business proposed to be transacted. There is apparently no necessity for attributing bad faith to the corporation in its original formation or in the alteration of its certificate.

After having operated in a limited way for a while, the corporation determined that it would be an advantage to the public and to itself if it would extend its operations and render a general electric service to whomsoever might desire it, and it filed an amended certificate under section 18 of the Stock Corporation Law which, if valid, enables it, with the certificate of the Public Service Commission, to perform the business of an electrical corporation. If all the powers sought to be conferred by the original and amended certificate had been included in the original certificate, the corporation would have been a legally formed electrical corporation. The new certificate extends the powers and operations of the corporation. Instead of being confined to distribution of electricity over private property and for certain particular persons, it seeks to distribute over private and public property and for the use of whomsoever desires it. The business of the original corporation was to generate and distribute electricity. That is still its purpose. The original corporation clearly would be compensated for electricity furnished the railroads, street railroads and its tenants. It, therefore, had power to generate and sell electricity. The new certificate only gives it a larger field for distribution and new customers.

The extension of the business by the alteration of the certificate is well within the provision of section 18 of the Stock Corporation Law. That section permits any stock corporation " organized under any general or special law " to alter its certificate of incorporation so as to include therein any purposes, powers or provisions " which might be included in the certificate of incorporation of a corporation organized under any general law of this State for a business of the same general character." The new powers are not confined to those permitted to a corporation organized under the same law as the original corporation, but include those which may be exercised by any corporation organized under any general law, indicating

784 People ex rel. Cayuga Power Corp. *v.* P. S. Comm.

Third Department, November, 1918.          [Vol. 184.

clearly that the law under which the corporation was formed is immaterial. The test is that the corporation sought to be formed under the original and amended certificate shall be limited to the powers which might be included in a certificate of incorporation under any law, and that the business shall be of the same general character. We have seen that the business contemplated under the original and amended certificate is of the same general character, that is the generation, distribution and sale of electricity. The corporation only seeks a larger field of operation.

Aside from the provision of section 18, the stockholders of a corporation, who desire to enlarge its operation and scope, may form a new corporation and transfer the business from the old to the new corporation. It was open to the stockholders of this corporation to take that course, but the section referred to furnished an easier way, but one which cannot be detrimental to the public or the stockholders. The rights of all are conserved. The alteration of a certificate can only be made by the president and secretary upon the vote of a majority of the directors and a vote of three-fifths of the stock taken at a meeting called upon due notice for that purpose.

A natural gas company incorporates under the Business Corporations Law. (*Wilson* v. *Tennent,* 61 App. Div. 100; affd., 179 N. Y. 546; *Farnsworth* v. *Boro Oil & Gas Co.,* 216 id. 40, 42.) But a lighting company may carry on such a business under the Transportation Corporations Law (§ 61, subd. 1). The Public Service Commission has supervision of a business corporation engaged in supplying natural gas. (Pub. Serv. Comm. Law, § 2, subd. 13; Id. § 64.)

The name of the statute under which a corporation is formed is immaterial after it is formed; the Stock Corporation Law applies to it, and section 18 refers in no way to the law under which the corporation was formed. The nature of the corporation as changed, and the fact that the business is of the same general character, are the only material considerations under that section.

I think the Commission erred in holding that the relator is not legally incorporated to carry on a lighting business and in refusing to consider the applications upon the merits.

I favor a reversal of the determination and the remission of the matter to the Commission for its further action.

All concurred, except WOODWARD, J., dissenting with an opinion in which COCHRANE, J., concurred.

WOODWARD, J. (dissenting):

On the 4th day of May, 1915, W. M. Rose, Harold Stanley and Frank S. Connett executed and acknowledged and filed in the office of the Secretary of State a certificate of incorporation of the Cayuga Power Corporation. In this certificate it was declared that the "business and purposes for which this corporation is formed, are: To generate and distribute electricity solely on or through private property for railroad or street railroad purposes, or for its own use or the use of its tenants; to do every other act or acts, thing or things incidental or appertaining thereto or growing out of or connected with the aforesaid business and powers, or any part or parts thereof, provided the same be not inconsistent with the law under which this corporation is organized."

Obviously the last clause above quoted adds nothing to the "business and purposes" declared in the first clause. Having declared the business and purposes to be to "generate and distribute electricity solely on or through private property for railroad or street railroad purposes, or for its own use or the use of its tenants," the powers incident to the generation and distribution of electricity in the manner set forth would follow under the law, and the concluding clause could not enlarge or reserve any rights, except such as the law itself provides. Mere general language does not have the effect to enlarge powers specifically mentioned under the requirement of the statute that the purposes shall be declared.

It will be observed that while the certificate of incorporation recites that it is made and filed "pursuant to the provisions of article 7 of the Transportation Corporations Act," its "business and purposes," as declared, exclude the objects for which such transportation corporations are created. Section 60, article 7, of the Transportation Corporations Law (Consol. Laws, chap. 63; Laws of 1909, chap. 219) pro-

786 People ex rel. Cayuga Power Corp. *v.* P. S. Comm.

Third Department, November, 1918. [Vol. 184.

vides that " three or more persons may become a corporation for manufacturing and supplying gas for lighting the streets and public and private buildings of cities, villages and towns in this State, or for manufacturing and using electricity for producing light, heat or power, and in lighting streets, avenues, public parks and places, and public and private buildings of cities, villages and towns within this State, or for two or more of such purposes, by making, signing, acknowledging and filing a certificate stating the name of the corporation, its objects, the amount of its capital stock, the term of its existence not to exceed fifty years, * * * and the names of the towns, villages, cities and counties in which the operations of the corporation are to be carried on, and thereupon the persons who shall have signed the same, their associates and successors shall be a corporation by the name stated in the certificate." A corporation organized under this act must be, not for the purpose of generating and distributing electricity solely on or through private property for railroad or street railroad purposes, or for its own use or the use of its tenants, which may be done under the Business Corporations Law, and which is excluded from the definition of " electrical corporation " as used in subdivision 13 of section 2 of the Public Service Commissions Law (Consol. Laws, chap. 48; Laws of 1910, chap. 480), but " for manufacturing and using electricity for producing light, heat or power, and in lighting streets, avenues, public parks and places, and public and private buildings of cities, villages and towns within this State." It must state, in its proposed charter, " its objects," and these must be one or both of the objects for which such a corporation may be organized, and it cannot be satisfied by a declaration of a purpose entirely distinct from the results which were proposed to be accomplished by these corporations. While the act requires that the certificate shall define " its objects," the certificate declares, in harmony with the provisions of section 2 of the Business Corporations Law (Consol. Laws, chap. 4 [Laws of 1909, chap. 12], as amd. by Laws of 1909, chap. 484), that " the business and purposes " for which such corporation is created are such as may be done under the latter statute, and not such as the Transportation Corporations Law provides for. Like-

wise the Transportation Corporations Law requires that the certificate shall name the " towns, villages, cities and counties in which the operations of the corporation are to be carried on," and the certificate of the Cayuga Power Corporation, as originally made, merely declares that " the operations of the corporation are to be carried on solely at Portland Point, Tompkins county, New York," while its principal place of business, required by the Business Corporations Law, is given as Ithaca, N. Y. This is not required by the Transportation Corporations Law, nor does the latter act require that the amount of capital with which the corporation will begin business shall be stated, but we find in the certificate that this alleged public utilities corporation is to begin business with $500. If we look beyond section 60 and into section 61 of the Transportation Corporations Law we find that " every such corporation shall have the following additional powers," which include all of the powers necessary to the holding of local franchises for each of the objects provided for in section 60, with authority to take and hold such real estate as may be necessary in the various communities in which it may carry on its operations, etc.

It thus appears, we think, that notwithstanding the recital in the certificate, the Cayuga Power Corporation was not created under the provisions of article 7 of the Transportation Corporations Law, but owed whatever of power and authority it held to the provisions of the Business Corporations Law, the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28) and the Stock Corporation Law (Consol. Laws, chap. 59; Laws of 1909, chap. 61), which acts were all passed at one and the same time, and constitute one scheme of legislation and must be read and construed together. (*People ex rel. Haberman* v. *James*, 5 App. Div. 412, 421; Birdseye, Cumming & Gilbert's note to Business Corporations Law.) In this note the editors say: " It was the theory of the Statutory Revision Commission that this chapter, in connection with the General and Stock Corporation Laws, should provide a uniform method of procedure for the incorporation of corporations created for the purpose of engaging in any lawful business, except such as may be formed under the Banking Law, the Insurance Law, the Railroad Law, and

788   People ex rel. Cayuga Power Corp. *v.* P. S. Comm.

Third Department, November, 1918.        [Vol. 184.

the Transportation Corporations Law. A business corporation, to determine its corporate powers and obligations, must refer to the General Corporation Law, containing provisions applicable to all corporations; the Stock Corporation Law, containing provisions applicable to all stock corporations, and the Business Corporations Law, containing provisions peculiar to business corporations as distinguished from moneyed and transportation corporations." (See Vol. 1 Consol. Laws [2d ed.], p. 853.)

In harmony with this note the second section of the Business Corporations Law provides, with an exception not important here, that " three or more persons may become a stock corporation for any lawful business purpose or purposes other than a moneyed corporation, or a corporation provided for by the banking, the insurance, the railroad and the transportation corporations laws " by filing a certificate containing exactly the matters which we find in the original certificate, and which, as we have pointed out, excludes the powers conferred by the Transportation Corporations Law.

The Cayuga Power Corporation, which, we must hold, was a business corporation, as distinguished from a transportation corporation, entered upon the work of constructing a power house, executed a mortgage upon its premises, and did the things which a business corporation may do, and subsequently, and on the 9th day of December, 1916, executed a certificate to amend its charter, which was filed with the Secretary of State on the twelfth of the same month, in which it was provided that "Its objects are also to be: Manufacturing and using electricity for producing light, heat or power, and in lighting streets, avenues, public parks and places, and public and private buildings of cities, villages and towns within this State."

Armed with this amended certificate the Cayuga Power Corporation petitioned the Public Service Commission for authority to exercise franchises or rights granted by various municipalities, which petition was denied. An application was made for a rehearing, and this was denied, and then the corporation made an application for authority *nunc pro tunc* to make a mortgage, issue and dispose of bonds secured thereby and to issue capital stock. All of these applications

were denied, on the ground that the Cayuga Power Corporation, a business corporation, could not be transformed into and given the rights of a transportation corporation (13 State Dept. Rep. 282), and the corporation has proceeded by certiorari to review these determinations.

We are of the opinion that the Public Service Commission is entirely right in its attitude; that a corporation may not be organized in harmony with the Business Corporations Law and go on and prepare for doing the work of a transportation corporation, without regard to the limitations of the Public Service Commissions Law, and then, by a mere amendment of its certificate, transform itself into a transportation corporation and be entitled to enter upon its enlarged career, disregarding the provisions intended for the welfare of the public. For instance, section 68 of the Public Service Commissions Law provides that " no gas corporation or electrical corporation shall begin construction of a gas plant or electric plant without first having obtained the permission and approval of the Commission of each district within which any part of the work of construction is to be performed," and that " no such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised, * * * without first having obtained the permission and approval of the proper Commission." This was obviously intended to protect the public against just such a situation as is here presented, where an investment is made before there is any consideration given to the public needs, and the corporation is clamoring for an opportunity to earn an income upon its investment, regardless of public considerations. To make sure that these privileges should not be improperly granted to a corporation not authorized to undertake the work of a public utilities corporation it was provided in the same section that " before such certificate shall be issued a certified copy of the charter of such corporation shall be filed in the office of the Commission," and, of course, if that charter does not prove to be one entitling the applicant to the privileges of a gas or electrical corporation, it is the duty of the Commission to deny the privileges.

If we are right in holding that the original certificate

**790**    People ex rel. Cayuga Power Corp. *v.* P. S. Comm.

Third Department, November, 1918.       [Vol. 184.

conformed to the requirements of the Business Corporations Law, and not to the requirements of the Transportation Corporations Law, then it must be obvious that there is no power under the provisions of section 18 of the Stock Corporation Law for an amendment of this business corporation charter which will give it the powers of an electrical corporation, as defined in subdivision 13 of section 2 of the Public Service Commissions Law and prescribed in sections 60 and 61 of the Transportation Corporations Law.    Section 18 of the Stock Corporation Law provides that " any stock corporation heretofore or hereafter organized under any general or special law of this State may alter its certificate of incorporation so as to include therein any purposes, powers or provisions which at the time of such alteration may apply to corporations engaged in a business of the same general character, or which might be included in the certificate of incorporation of a corporation organized under any general law of this State for a business of the same general character."    A corporation organized under the Business Corporations Law for the purpose of generating and distributing electricity solely on or through private property for railroad or street railroad purposes, or for its own use or the use of its tenants, clearly excludes all idea of such a corporation as is provided for in the Transportation Corporations Law, and the Business Corporations Law itself, by excepting transportation corporations from the lawful businesses which may be transacted by business corporations, shows conclusively that the powers of a transportation corporation are not of the " same general character " as those which are provided for in the Business Corporations Law.    To manufacture electricity for purely private purposes, involving no use of public streets and places, is simply a manufacturing enterprise, like the operation of any other productive plant.    It is the primary purpose to produce the current.    In the case of a transportation corporation the production of electricity is merely incidental to the primary purpose of furnishing the community with light, heat and power, as the primary purpose of a railroad is to carry freight and passengers for the public, and the two enterprises are distinct and come under entirely different relations to the State and its citizens.    The one is subject to no other control than that which prevails in the case of a grist

mill or a tannery; the other, from considerations of public policy, is made subject to the supervision of the Public Service Commission, and it was the purpose of the Public Service Commissions Law that the activities of transportation corporations, created after the enactment of that law, at least, should be subject to supervision and control from the beginning. This could not be avoided directly by an electrical corporation, as defined in the Public Service Commissions Law, and the courts do not permit that to be done indirectly which may not be done directly. (*Holmes* v. *Mead,* 52 N. Y. 332, 340.)

We are of the opinion that the Cayuga Power Corporation is now, as it always has been, a mere business corporation, and that the Public Service Commission is without authority to grant the privileges which the corporation asks, and that it properly denied the applications.

The order of the Public Service Commission should be affirmed, with costs.

COCHRANE, J., concurred.

Determination reversed, with fifty dollars costs and disbursements, and the matter remitted to the Commission for its further action.